# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

## CASE NO. 2:18-cv-11517-ES-CLW

## MOTION DAY: AUGUST 6, 2018

| | |
|---|---|
| ANDREW MACKMIN, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>VISA INC., *et al.*,<br><br>　　　　　　Defendants. | Action Pending in United States District Court for the District of Columbia<br><br>C.A. No. No. 1:11-cv-01831-RJL |
| MARY STOUMBOS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>VISA INC., *et al.*,<br><br>　　　　　　Defendants. | Action Pending in United States District Court for the District of Columbia<br><br>C.A. No. No. 1:11-cv-01882-RJL |
| NATIONAL ATM COUNCIL, INC., *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>VISA INC., *et al.*,<br><br>　　　　　　Defendants. | Action Pending in United States District Court for the District of Columbia<br><br>C.A. No. No. 1:11-cv-01803-RJL |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR AN ORDER COMPELLING THIRD-PARTY
<u>NYCE PAYMENTS NETWORK, LLC TO PRODUCE DOCUMENTS</u>**

010275-11 1052820 V1

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

I. NYCE's Data Are Relevant and Substantially Needed. ......................................................2

II. NYCE Has Not Shown That Its Data Are Trade Secrets and Its Competitive Concerns are Addressed by the Protective Order. ........................................................................................6

III. Industry Protocols Do Not Prevent NYCE From Producing Data. ....................................8

IV. NYCE Has Failed to Substantiate Its Burden Objection. ...................................................9

V. NYCE's Request for $7 Billion in Costs Is Meritless. ......................................................10

CONCLUSION AND REQUESTED RELIEF ............................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aevoe Corp. v. AE Tech Co.*,
 2013 WL 5954570 (D. Nev. Nov. 6, 2013) ...................................................................4

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
 2015 WL 5093503 (E.D.N.Y. July 10, 2015) ................................................................3

*Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*,
 319 F.R.D. 277 (N.D. Cal. 2017) ................................................................................11

*Columbus Drywall and Insulation, Inc. v. Masco Corp.*,
 2006 WL 2871834 ........................................................................................................4

*Direct Purchaser Class Plaintiffs v. Apotex Corp.*,
 2017 WL 4230124 (S.D. Fla. May 15, 2017) ...............................................................4

*In re Domestic Drywall Antitrust Litig.*,
 322 F.R.D. 188 (E.D. Pa. 2017) ....................................................................................3

*Duffy v. Lawrence Mem'l Hosp.*,
 2017 WL 5629625 (D. Kan. Nov. 22, 2017) ...............................................................10

*Grand River Enterprises Six Nations Ltd v. King*,
 2009 WL 222160 (S.D.N.Y. Jan. 30, 2009) ..................................................................8

*Grand River Enterprises Six Nations, Ltd. v. King*,
 2009 WL 330213 (S.D.N.Y. Feb. 9, 2009) ...................................................................8

*Hernandez v. Hendrix Produce, Inc.*,
 2014 WL 953503 (S.D. Ga. Mar. 10, 2014) ...............................................................10

*In re Lazaridis*,
 865 F. Supp. 2d 521 (D.N.J. 2011) ...............................................................................4

*Mackmin et al. v. Visa Inc.*,
 18-mc-00057 (M.D. Fla.) ..............................................................................................1

*Mallinckrodt LLC v. Actavis Labs. FL, Inc.*,
 2017 WL 5476801 (D.N.J. Feb. 10, 2017) (Waldor, J.) ...............................................4

*McCrary v. Elations Co. LLC*,
 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) ..............................................................3

*In re Mushroom Direct Purchaser Antitrust Litig.*,
 2012 WL 298480 (E.D. Pa. Jan. 31, 2012) ................................................................4, 7

*In re Mushroom Direct Purchaser Antitrust Litig.*,
    319 F.R.D. 158 (E.D. Pa. 2016) ................................................................................................2

*Orion Power Midwest, L.P. v. Am. Coal Sales*,
    2008 WL 4462301 (W.D. Pa. Sept. 30, 2008) ........................................................................10

*Osborn v. Visa*,
    797 F.3d 1057 (D.C. Cir. 2015) ................................................................................................2

*In re Pinchuk*,
    2014 WL 1745047 (S.D. Fla. Apr. 30, 2014) ...........................................................................4

*R.J. Reynolds Tobacco v. Philip Morris, Inc.*,
    29 F. App'x. 880 (3rd Cir. 2002) ..................................................................................7, 8, 11

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    2010 WL 11613859 (D.D.C. Sept. 9, 2010) .............................................................................4

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    292 F. Supp. 3d 14 (D.D.C. 2017) .........................................................................................2, 5

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
    725 F.3d 244 (D.C. Cir. 2013) ..................................................................................................5

*Realtek Semiconductor Corp. v. LSI Corp.*,
    2014 WL 4365114 (N.D. Cal. Sept. 3, 2014) .........................................................................11

*SI Handling Sys., Inc. v. Heisley*,
    753 F.2d 1244 (3d Cir. 1985) ...................................................................................................6

## OTHER AUTHORITIES

Fed. R. Civ. P. 45 ................................................................................................................. *passim*

Fed. R. Evid. 702 ..........................................................................................................................3

Federal Judicial Center's *Reference Manual on Scientific Evidence* (3d ed. 2011) .........................3

Local Rule 7.2(d) ..........................................................................................................................1

010275-11 1052820 V1

## PRELIMINARY STATEMENT

Plaintiffs' motion established that their subpoenas call for data that are proportionate and needed to model classwide damages. In response, NYCE's hyperbolic opposition brief conjures purely speculative and exaggerated injuries and burdens that NYCE never raised in meet-and-confers.[1] The competitive injuries NYCE claims it will suffer are fully addressed by the Protective Order, which precludes disclosure of NYCE's data to any competitor, and its "billions" in alleged compliance costs are entirely self-imposed by proposing redactions for relevance that are neither proper nor required. NYCE's arguments about the alleged irrelevance of the data fundamentally misstate the legal standards governing class certification and ignore legions of cases establishing how injury and damages are proven in antitrust cases like this one.

Unlike every other third-party network that Plaintiffs have subpoenaed, all of whom have agreed to produce responsive data,[2] NYCE refused to participate in any discussion geared toward compromise. NYCE has chosen instead to stand on specious objections—many of which were not articulated until Plaintiffs moved to compel—while demanding billions of dollars in the event the motion is granted. That is not good faith. Plaintiffs respectfully request that this Court either compel production of all responsive data NYCE has finally identified[3] without cost-shifting, or, at a minimum, compel NYCE to engage in expedited and good faith negotiations to establish parameters for a data production to be made well in advance of Plaintiffs' September 28, 2018 class certification deadline.

---

[1] NYCE's 37-page opposition brief is over-length. *See* Local Rule 7.2(d) (limiting opposition briefs in 12-point proportional font to 30 pages).

[2] *See* Dkt. # 1-1 at 4-5. The only exception is AFFN, a NYCE affiliate represented by the same counsel. Plaintiffs have also moved to compel data from AFFN. *See Mackmin et al. v. Visa Inc.*, 18-mc-00057 (M.D. Fla.), filed July 20, 2018.

[3] The data are described in the Declaration of Robert Woodbury. *See* Dkt. # 9-9 at ¶ 42.

## I.    NYCE's Data Are Relevant and Substantially Needed.

NYCE claims that its data are irrelevant because Plaintiffs supposedly never articulated a damages theory as to which the data might bear. *See* Dkt. # 9 at 16-18. Not so. As Plaintiffs have explained, "[d]amages calculations in antitrust cases seek to compare plaintiffs' actual experience in the real world with what the plaintiffs' experience would have been, 'but for' the antitrust violation." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 56 (D.D.C. 2017). Such is the case here. To show that Class members were injured by the restraints here challenged, Plaintiffs must compare (a) the ATM surcharges and network fees they paid in the real world to (b) projections of the surcharges and network fees that would have prevailed in a market without the restraints. *See* Dkt. # 1-13 at 3-4; *see also Osborn v. Visa,* 797 F.3d 1057, 1064 (D.C. Cir. 2015) (Plaintiffs' alleged injury is a "classic form of injury-in-fact").

For these purposes, NYCE's data—which NYCE does not dispute include millions of Class transactions[4]—are of obvious relevance. The data will show the actual surcharges and network fees paid by Class members. In addition, the data will allow Plaintiffs to develop economic models capable of predicting those surcharges and fees in the but-for world. To this latter end, consumer Plaintiffs intend to construct regression models from party and third-party data, a widely recognized approach for isolating "the effect of an alleged conspiracy on price, taking into consideration other factors that might also influence price." *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 201 (E.D. Pa. 2016) (internal quotation marks omitted). As the Federal Judicial Center's *Reference Manual on Scientific Evidence* at 348 n.90 (3d ed. 2011) states:

---

[4] *See* Dkt. # 9-9 at ¶ 38 (noting that NYCE "processes millions of transactions a day"); *see also* Dkt. # 1-1 at 4 (explaining how Class definitions cover transactions processed over NYCE).

> [I]n a price-fixing antitrust case, the expert can ask what the price of a product would have been had a certain event associated with the price-fixing agreement not occurred. If prices would have been lower, the evidence suggests impact. If the expert can predict how much lower they would have been, the data can help the expert develop a numerical estimate of the amount of damages.

As NYCE has been advised, consumer Plaintiffs' regression models will predict but-for prices, in part, by examining the relationship between the surcharges ATM operators impose and the interchange revenue they receive from ATM networks—two types of data that have been requested of NYCE. *See* Dkt. # 1-13 at 4. The models' ability to isolate this relationship and yield reliable results will be substantially affected by the quantity and quality of Class data Plaintiffs can amass. *See* Fed. R. Evid. 702 (expert analysis must rest on "sufficient facts or data"); *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 214 (E.D. Pa. 2017) ("only compelling reason" to doubt particular regression "would be if the data used was incomplete or inaccurate, such that a reasonable economist would not rely on it").[5]

ATM operator Plaintiffs pay network fees, not surcharges, and thus will develop a different model to demonstrate antitrust impact across their respective Class. But NYCE's data are no less relevant to this undertaking. The ATM operators must develop evidence of network fees that would have been charged to them in the absence of the anticompetitive rule at issue in this litigation. The actual network fees and volume of transactions charged to independent ATM operators by NYCE are essential input data required for the relevant economic model.

NYCE also wrongly asserts that Plaintiffs cannot show a "substantial need" for the data

---

[5] Notably, regression models are frequently challenged at class certification on the ground that they have insufficient data inputs to be reliable. *See, e.g., In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *20 (E.D.N.Y. Oct. 15, 2014); *McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *7 (C.D. Cal. Dec. 2, 2014).

without submitting expert declarations reiterating how the data will be used.[6]  To begin with, Plaintiffs do not have the burden to show a "substantial need" because NYCE has not demonstrated that its data are trade secrets or otherwise protected under Rule 45(d)(3)(B).  *See* Dkt. # 1-1 at 8-9; *see infra* at 6.  And even if NYCE's could establish that its data are trade secrets, NYCE does not cite a *single case* suggesting that expert or other declarations are needed to show substantial need.[7]  This is because they are not; courts routinely resolve issues of relevance and need based on the facts and circumstances described in briefing.[8]  Presumably recognizing as much, NYCE mischaracterizes this as a "one-of-a-kind" case for which there is no "generally accepted economic damages model."  Dkt. # 9 at 22.  But this case is no different from every other antitrust class action in which economists must use data to compare actual prices with predicted prices.  No expert declaration is needed to state the obvious:  NYCE maintains a large amount of the Class transactional data that this effort requires.

---

[6] NYCE asserts that "substantial need" is absent unless the data are "essential."  But Plaintiffs need not show that their case rises and falls on NYCE's data; if that were the test, no party would risk moving to compel.  Rather, as NYCE's cases note, materials are "essential" so long as they are "reasonably necessary for a fair opportunity to develop and prepare the case for trial."  *Aevoe Corp. v. AE Tech Co.*, 2013 WL 5954570, at *3 (D. Nev. Nov. 6, 2013).

[7] NYCE's cases stand for the unremarkable proposition that a subpoenaing party must explain the "nature and importance" of requested information, not that this explanation needs to come from a declarant.  *See, e.g., In re Lazaridis*, 865 F. Supp. 2d 521, 527-28 (D.N.J. 2011).  Indeed, this Court has distinguished *Lazaridis* without any mention of a requirement for sworn testimony on relevance or need.  *See Mallinckrodt LLC v. Actavis Labs. FL, Inc.*, 2017 WL 5476801, at *4 (D.N.J. Feb. 10, 2017) (Waldor, J.) (granting motion to compel based on descriptions of relevance and need set forth in brief).

[8] *See, e.g., Mallinckrodt LLC*, 2017 WL 5476801, at *5 (Waldor, J.); *In re Mushroom Direct Purchaser Antitrust Litig.,* 2012 WL 298480, at *3-4 (granting motion to compel third-party's alleged trade secrets based on explanation in brief that data were needed to calculate damages); *see also Columbus Drywall and Insulation, Inc. v. Masco Corp.*, 2006 WL 2871834, at *2 (S.D. Ohio Aug. 7, 2006); *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, 2017 WL 4230124, at *3-4 (S.D. Fla. May 15, 2017); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 2010 WL 11613859, at *4 (D.D.C. Sept. 9, 2010).

NYCE fares no better suggesting that its data might be included in anticipated party or third-party productions, or even publicly. For one, this assertion completely undermines NYCE's trade secrets claim. Second, it is false. ATM transaction data are dispersed across market participants, and NYCE maintains a mass of data that are not in the possession of any party or subpoenaed third party. *See* Dkt. # 1-1 at 4; Dkt. # 1-13 at 4. Because NYCE's data will not be included in any incoming production, it matters not, as NYCE suggests, that those productions are incomplete. The public data sources that NYCE has identified, moreover, all concern purchases using a debit card, which are completely different from the ATM cash withdrawals at issue here. *See* Dkt. # 9 at 30.

Last, NYCE claims that its data are not needed because no one knows "if a class will be certified." Dkt. # 9 at 2. This argument is nonsensical. Plaintiffs are seeking data that are highly relevant to their class certification motion, which must show that "injury-in-fact can be established at trial on a class-wide basis through common evidence." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d at 101–02. Attempting to minimize the need for data, NYCE asserts that "[p]laintiffs are only required to present a *plausible* class-wide methodology for measuring damage." Dkt. # 9 at 2 (emphasis added). But "a 'plausible' theory of common proof is no longer sufficient to satisfy the Rule 23(b)(3) predominance requirement for class certification." *Rail Freight*, 292 F. Supp. 3d at 73 n.22. Rather, reliable models must be developed to show antitrust impact across the class. *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 255 (D.C. Cir. 2013) ("It is now clear, however, that Rule 23 not only authorizes a hard look at the soundness of statistical models that purport to show

predominance—the rule commands it."). The data, in short, are needed now.[9]

## II. NYCE Has Not Shown That Its Data Are Trade Secrets and Its Competitive Concerns are Addressed by the Protective Order.

Although NYCE repeatedly asserts the subpoenaed data are trade secrets, just saying so does not make it so. The data Plaintiffs seek arise from ATM transactions that by definition involve multiple parties—namely, NYCE, a cardholder, an issuing bank, an ATM operator and (potentially) an ATM processor. Data scattered across the marketplace cannot rise to the level of a trade secret. *See SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1256 (3d Cir. 1985) (a primary factor in determining whether information is trade secret is "the extent to which the information is known outside of the owner's business"). Moreover, NYCE has contradicted its assertions by arguing that Plaintiffs should be pursuing the data from other parties, mainly the hundreds of ATM operators that participate in the NYCE network. *See* Dkt. # 1-14 at 5-6.[10] NYCE also has failed to demonstrate a history of maintaining the data's confidentiality. NYCE suggests, for example, that the fees it charges ATM card issuers and ATM operators are among its most closely guarded competitive secrets. *See* Dkt. # 9-9 at ¶¶ 9-10, 25. But NYCE's corporate parent has disclosed those fees publicly while explicitly comparing them to the fees charged by "other" networks. *See* Dkt. # 1-16 at 9.

---

[9] NYCE's contention that Judge Leon has somehow prejudged the propriety of class certification flagrantly misstates the record. *See* Dkt. # 9 at 2. Judge Leon said nothing about Plaintiffs' ability to show classwide injury. Rather, in denying a preliminary injunction, Judge Leon held that the ATM operators did not establish the economic mechanism by which the ATM operators have been harmed. *See* Dkt. # 9-4 at 7. Such evidence can only be developed through economic expert opinion testimony, which was not submitted at the time of the preliminary injunction. For this reason, it is necessary that the ATM operators timely receive complete data from the third-party ATM networks so that such expert opinion evidence can be developed.

[10] As addressed previously, Plaintiffs should not be compelled to subpoena hundreds of entities to assemble data available from a single, more-efficient source. *See* Dkt. # 1-1 at 9-10.

- 6 -

NYCE's competitive concerns, which NYCE never explained until Plaintiffs moved to compel, are similarly unsubstantiated.[11] In a nutshell, NYCE claims that if (a) its data were revealed to employees of a competing network, then (b) they would learn NYCE's pricing and volume relationships with particular clients and then (c) use that information to formulate bids to "take clients away from NYCE." Dkt. # 9-9 at ¶ 22. But NYCE presents nothing preventing NYCE's clients from revealing their pricing arrangements to competing networks—as one would expect them to do in order to negotiate better deals.

In any event, the Protective Order includes an outside "attorneys' eyes only" provision that bars competing networks from seeing NYCE's data, thereby preventing the competitive injury that NYCE claims could result from the data's production. *See* Dkt. # 1-1 at 6-7. This is dispositive. As Plaintiffs have shown, the Third Circuit has followed courts across the country in recognizing that trade secret or other confidentiality concerns, even if valid, do not support withholding third-party materials where, as here, a protective order bars the disclosure feared. *See R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 F. App'x. 880 (3rd Cir. 2002).[12]

NYCE tries to distinguish *R.J. Reynolds* by claiming the third party there "failed to establish the documents subpoenaed were 'trade secrets' and, thus, the protective order was adequate to protect its interest." Dkt. # 9 at 16. But that is not what the Third Circuit held. The Third Circuit held that "[e]ven if" the documents were trade secrets, they would need to be produced because the protective order "restrict[ed] use of information gained from [the third -

---

[11] The explanation is set forth in what NYCE oddly describes as the "unrebutted declaration" of Robert Woodbury. *See* Dkt. # 9 at 19.

[12] *See also* Dkt. # 1-1 at 7-9 n.13 (collecting cases); *see also In re Mushroom Direct Purchaser Antitrust Litig.*, 2012 WL 298480, at *3, 5-6 (holding that protective order sufficient to address third party's concern that "at least twenty-one of the parties to this litigation are its direct competitors," observing that "other Courts have found that similar protective orders are sufficient to protect discovery of confidential business information").

party] to the pending antitrust and unfair trade practices litigation." *R.J. Reynolds Tobacco*, 29 F. App'x at 882. The same is true here—indeed, the Protective Order here goes much further to restrict disclosure to any employee of any party.[13]

NYCE resorts to nitpicking the Protective Order, but this is just more misdirection. NYCE's position, as expressed in its first meet-and-confer letter, is that its confidentiality concerns "cannot be mitigated by protective order or comparable measure." *See* Dkt. # 1-12 at 2. This is because, contrary to an overwhelming body of case law, NYCE assumes that *any* protective order will be violated. *See id.*; Dkt. # 1-1 at 7. Even now NYCE does not suggest that there is an amendment to the Protective Order sufficient to address its concerns.

### III. Industry Protocols Do Not Prevent NYCE From Producing Data.

As a last gasp, NYCE asserts that Payment Card Industry Data Security Standards ("Standards") "prohibit NYCE's dissemination of the information." Dkt. # 9 at 2. Putting aside that NYCE never raised this issue in meet-and-confers, NYCE has not identified any specific rule that would prevent NYCE from producing the subpoenaed data. Nor could it. According to NYCE, the Standards apply to "cardholder data," Dkt. # 9-9 at ¶ 29, which Plaintiffs have not requested. NYCE also neglects to mention that the Standards do "not supersede local or regional laws, government regulations, or other legal requirements"—that is, a subpoena. *See* PCI DSS at 5.[14] Tellingly, no party or subpoenaed third party has even raised the Standards.

---

[13] NYCE continues to rely on a few outlier cases involving party misconduct and other unusual circumstances that called the efficacy of a protective order into doubt. Plaintiffs preemptively distinguished these cases, *see* Dkt. # 1-1 at 8, 10 ns. 14-15, and NYCE makes no attempt to resuscitate them. NYCE also cites *Grand River Enterprises Six Nations Ltd v. King*, 2009 WL 222160, at *3-5 (S.D.N.Y. Jan. 30, 2009), but this decision is related to *Grand River Enterprises Six Nations, Ltd. v. King*, 2009 WL 330213, at *5 (S.D.N.Y. Feb. 9, 2009), which Plaintiffs have noted involved experts who refused to agree to any confidentially requirements.

[14] Available at https://www.pcisecuritystandards.org/documents/PCI_DSS_v3-2-1.pdf?agreement=true&time=1532347894577.

- 8 -

## IV.   NYCE Has Failed to Substantiate Its Burden Objection.

NYCE's supposed $7 billion burden to comply with the subpoenas is a gross exaggeration. No other subpoenaed ATM network[15] has suggested that production costs were even sufficient to warrant cost-shifting, much less in excess of many countries' GDP. NYCE itself *never* even hinted during meet-and-confers to any of the calculations that purportedly support its claim of a $7 billion compliance burden. Worse still, NYCE does not dispute that Plaintiffs offered to discuss narrowing requests based on the format and type of data NYCE maintains, and that NYCE refused to engage in that discussion. It is improper for NYCE to wait until a motion is filed to attempt to substantiate burden with information that could have helped to cooperatively establish discovery parameters.

NYCE claims that "nonspecific 'offers' to consider narrowing the Subpoenas' requests" are insufficient. *See* Dkt. # 9 at 15. But to the extent Plaintiffs' offers were "nonspecific," it was because NYCE never specified what data it stores or in what form. In many cases, data requests similar to Plaintiffs' are satisfied by a simple push of a button without any labor-intensive tasks. With no insight into NYCE's data systems, there was no way for Plaintiffs to know how much— or little—burden was associated with fulfilling the subpoena requests.

In any event, NYCE's supposed "substantiation" here is not sound. NYCE claims that it will take *40.3 million labor hours* at $190 per hour (essentially *all* of the estimated $7 billion in costs) to redact information unrelated to ATM transactions. *See* Dkt. # 9-9 at ¶ 42.[16] This claim

---

[15] Plaintiffs have disclosed each of these third parties. *See* Dkt. # 1-1 at 4 n.8; Dkt. # 1-13 at 3. Not content, NYCE claims that Plaintiffs should divulge contact information for the third parties' *outside counsel*. That is not for Plaintiffs to disclose. If NYCE would like to contact outside counsel, then it should obtain that information from the third parties. That NYCE apparently has not done so speaks volumes about NYCE's real intentions.

[16] For context, 40.3 million labor hours amounts to 4,600 years. This means that while many third parties have produced data in a matter of weeks, NYCE's position is that even if it had an

is meritless on its face, even more so because redactions for relevance generally are not even permitted. *See Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008). And if NYCE were allowed to make such redactions here, it must bear the self-inflicted costs. *See Duffy v. Lawrence Mem'l Hosp.*, 2017 WL 5629625, at *3 (D. Kan. Nov. 22, 2017) (producing party responsible for redacting costs since it "chose to redact.")

More fundamentally, NYCE has supplied no basis to conclude that extraneous information would even be included in NYCE's data reports if NYCE had involved Plaintiffs in formulating searches tailored to Plaintiffs' requests. For example, the "Daily Terminal Activity Reports," which account for 90 percent of the costs NYCE claims, provide cardholders' debit card numbers, *see* Dkt. # 9-9 at ¶ 42(a), which is not information that Plaintiffs even requested.

## V.  NYCE's Request for $7 Billion in Costs Is Meritless.

NYCE claims Rule 45 *requires* that the purported $7 billion in "costs" it has calculated unilaterally based on its own say-so, without any input from Plaintiffs as to the scope and format of data, be imposed on Plaintiffs. *See* Dkt. # 9 at 35. That is *not* what Rule 45 requires.

Courts require cost shifting only for that portion of the compliance costs that are above and beyond what is reasonable—so-called "significant expenses." Fed. R. Civ. P. 45(d)(2)(B)(ii). Critically here, only "reasonable expenses" can be compensated under Rule 45, as an "unreasonably incurred expense is not an expense resulting from compliance with the subpoena." *Steward Health Care Sys. LLC v. Blue Cross & Blue Shield of Rhode Island*, WL 8716426, at *3 (E.D. Pa. Nov. 4, 2016) (internal quotation marks omitted). NYCE has failed to isolate reasonable expenses tied to its compliance with the subpoenas. Instead NYCE has

---

employee working on the matter continuously without sleep, NYCE could not make a data production until the year 6618.

- 10 -

"computed" the costs of gathering data that extend beyond Plaintiffs' requests while attempting to tag Plaintiffs with $7 billion for redactions that are not allowed and certainly not required.

Significant expense also must be measured in relation to the nonparty's "financial ability to bear the costs of production." *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc*., 319 F.R.D. 277, 281 (N.D. Cal. 2017) (internal quotation marks omitted); *see also United States v. McGraw–Hill Co.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014) ("This consideration makes practical sense—an expense might be 'significant,' for instance, to a small family-run business, while being 'insignificant' to a global financial institution."). NYCE is far from a "small family-run business." It is a wholly-owned subsidiary of "the world's largest global provider dedicated to banking and payments technologies," which is a billion-dollar company listed on the New York Stock Exchange and serves "more than 14,000 institutions in over 100 countries."[17] Even if NYCE had submitted reasonable compliance costs, NYCE has supplied no financial data from which this Court could deem those costs "significant." Cost shifting is unwarranted.[18]

## CONCLUSION AND REQUESTED RELIEF

Now that NYCE has at least partially specified what responsive data it maintains, Plaintiffs can formulate a more specific request for relief. Plaintiffs respectfully request that the Court overrule NYCE's objections in full and compel NYCE to produce without cost-sharing all data identified in Paragraph 42 of the Declaration of Robert Woodbury (Dkt. # 9-9). Plaintiffs

---

[17] *See* https://www.nyce.net/en/about (viewed July 29, 2018).

[18] Not a single case NYCE cites supports its position. For example, in *Realtek Semiconductor Corp. v. LSI Corp.*, 2014 WL 4365114, at *3 (N.D. Cal. Sept. 3, 2014), the court ordered the third party to produce within 14 days and denied cost-shifting. In *Hernandez v. Hendrix Produce, Inc.*, 2014 WL 953503, at *2 (S.D. Ga. Mar. 10, 2014), the court ordered the third party to contact and "in good faith confer with plaintiffs' counsel to resolve the production, delivery, and expense concerns that is has raised"— something that NYCE has so far refused to do. In *R.J. Reynolds Tobacco*, 29 F. App'x 880, the court merely remanded for a determination of whether or not expenses were "significant."

010275-11 1052820 V1

also respectfully request that, prior to any such production, NYCE be compelled to meet and confer with Plaintiffs in good faith to ensure that the data are produced in an appropriate and workable format and with all appropriate data fields.  In the alternative, if the Court is disinclined to compel this production, Plaintiffs respectfully request that NYCE's objections be overruled and that NYCE be ordered to engage in good-faith negotiations to establish mutually agreeable parameters for an immediate data production.  Given NYCE's record of poor cooperation, Plaintiffs respectfully request that the Court retain jurisdiction to supervise NYCE's compliance.

DATED this 30th day of July, 2018

By: */s/ Isaac Nesser*
Isaac Nesser
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison, 22nd Floor
New York, New York
(212) 849-7000
isaacnesser@quinnemanuel.com

*Of Counsel:*

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Tel.: (206) 623-7292
steve@hbsslaw.com

Jennifer Fountain Connolly
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006
Tel.: (202) 248-5403
jenniferc@hbsslaw.com

Ben M. Harrington
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Tel: (510) 725-3034
benh@hbsslaw.com

Stephen R. Neuwirth
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY  10010
(212) 849-7000
stephenneuwirth@quinnemanuel.com

Adam B. Wolfson
Viola Trebicka
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000
adamwolfson@quinnemanuel.com

Craig L. Briskin
MEHRI & SKALET, PLLC
1250 Connecticut Ave NW, Suite 300
Washington, DC  20036
(202) 822-5100 (phone)
Cbriskin@Findjustice.com

*Counsel for Andrew Mackmin and Sam Osborne*

Douglas Thompson
Michael G. McLellan
FINKELSTEIN THOMPSON LLP
1077 30th Street, N.W., Suite 150
Washington, D.C. 20007
202-337-8000 x 125
dthompson@finkelsteinthompson.com
mmclellan@finkelsteinthompson.com

- 13 -

Christopher Lovell
Gary S. Jacobson
Merrick Scott Rayle
LOVELL STEWART HALEBIAN JACOBSON LLP
61 Broadway, Suite 501
New York, NY 10006
(212) 608-1900
Fax: (212) 719-4775
clovell@lshllp.com
gsjacobson@lshllp.com
mrayle@lshllp.com

*Counsel for Mary Stoumbos*

Jonathan L. Rubin
MOGINRUBIN LLP
1615 M Street, N.W., Third Floor
Washington, D.C.  20036
Tel:  (202) 630-0616
jrubin@moginrubin.com

Jennifer Oliver
MOGINRUBIN LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 687-6611
joliver@moginrubin.com

*Counsel for Plaintiffs the National ATM Council, Inc.;*
*ATMs of the South, Inc.; Business Resource Group, Inc.;*
*Just ATMs, Inc.; Wash Water*
*Solutions, Inc.; ATM Bankcard Services, Inc.;*
*Selman Telecommunications Investment Group, LLC;*
*Scot Garner d/b/a SJI; Turnkey ATM Solutions, LLC;*
*Trinity Holdings Ltd, Inc.; and T&T Communications, Inc.*
*and Randal N. Bro d/b/a T & B Investments*

- 14 -

010275-11 1052820 V1

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2018 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

         */s/ Isaac Nesser*
Isaac Nesser
QUINN EMANUEL URQUHART &
  SULLIVAN LLP
51 Madison, 22nd Floor
New York, New York
(212) 849-7000
isaacnesser@quinnemanuel.com

- 15 -