**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

**CASE NO. 2:18-cv-11517-ES-CLW**

|  |  |  |
|---|---|---|
| ANDREW MACKMIN, et al., | : | Action Pending in United States District Court for the District of Columbia |
| Plaintiffs, | : | |
| | : | No. 1:11-cv-01831-RJL |
| v. | : | |
| VISA, INC., et al., | : | |
| Defendants. | : | |

|  |  |  |
|---|---|---|
| MARY STOUMBOS, | : | Action Pending in United States District Court for the District of Columbia |
| Plaintiff, | : | |
| | : | No. 1:11-cv-01882-RJL |
| v. | : | |
| VISA INC., *et al.*, | : | |
| Defendants. | : | |

|  |  |  |
|---|---|---|
| NATIONAL ATM COUNCIL, INC. et al., | : | Action Pending in the United States District Court for the District of Columbia |
| Plaintiffs, | : | |
| | : | No. 1:11-cv-01803-RJL |
| v. | : | |
| VISA INC., *et al.*, | : | |
| Defendants. | : | |

**NON-PARTY NYCE PAYMENTS NETWORK, LLC'S SURREPLY IN FURTHER
SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
<u>COMPLIANCE WITH SUBPOENA</u>**

(ORAL ARGUMENT REQUESTED - L. Civ. R. 37.1(b)(4))

# TABLE OF CONTENTS

**Page**

I.  PLAINTIFFS CONTINUE TO FAIL TO MEET THEIR BURDEN OF ESTABLISHING SUBSTANTIAL NEED FOR NYCE'S CONFIDENTIAL INFORMATION.................................................................................................. 1

II.  NYCE'S ATM DATA AND INFORMATION IS TRADE SECRET AND/OR CONFIDENTIAL ....................................................................................................... 3

III.  THE PCI SECURITY STANDARDS FURTHER SUPPORT THE CONFIDENTIAL NATURE OF NYCE'S INFORMATION ........................................... 5

IV.  PLAINTIFFS' RELIANCE ON THE PROTECTIVE ORDER IS MISPLACED ............ 6

V.  PLAINTIFFS' SUBPOENA SEEK TO IMPOSE ENORMOUS BURDEN ON NYCE.................................................................................................................... 8

VI.  PLAINTIFFS ASK NON-PARTY NYCE TO PRODUCE MASSIVE AMOUNTS OF DATA BUT REFUSE TO PAY THE COSTS FOR IT ............................................. 9

VII.  CONCLUSION.................................................................................................... 10

ACTIVE\61345013.v1-8/10/18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)............................................................2

*Coca-Cola Bottling Co. v. Coca-Cola Co.*,
107 F.R.D. 288 (D. Del. 1985) ...............................................................................7

*Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Elecs., Inc.*,
2014 WL 2808984 (N.D. Ill. June 20, 2014) ...........................................................7

*Cooney v. Sun Shipbuilding & Drylock Co.*,
288 F. Supp. 708 (E.D. Pa. 1968) ...........................................................................1

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998)...................................................................................9

*Latuszewski v. Valic Fin. Advisors, Inc.*,
2007 WL 4462739 (W.D. Pa. Dec. 19, 2007)..........................................................5

*Latuszewski v. Valic Fin. Advisors, Inc.*,
393 F. App'x 962 (3d Cir. 2010) .............................................................................5

*In re Lazaridis*,
865 F. Supp. 2d 521 (D.N.J. 2011) .........................................................................1

*Mannington Mills, Inc. v. Armstrong World Industries, Inc.*,
260 F.R.D. 525 (D. Del. 2002) ...............................................................................7

*McCrary v. Elations Co. LLC*,
2014 WL 12589137 (C.D. Cal. Dec. 2, 2014) .........................................................2

*SI Handling Sys., Inc. v. Heisley*,
753 F.2d 1244 (3d Cir. 1985)..................................................................................5

*Synthes, Inc. v. Emerge Med., Inc.*,
25 F. Supp. 3d 617 (E.D. Pa. 2014) ........................................................................5

*United States v. CBS, Inc.*,
666 F.2d 364 (9th Cir. 1982) ...............................................................................9, 10

*Youtie v. Macy's Retail Holding, Inc.*,
653 F. Supp. 2d 612 (E.D. Pa. 2009) ......................................................................4

ACTIVE\61345013.v1-8/10/18

**Other Authorities**

*Traversing the Breach: Why You Need to Prepare for Data Breaches and How to Do It*, Quinn
Emanuel Business Litigation Reports (Feb. 2015). ...................................................................6

**Rules**

Fed. R. Civ. P. 45 ...............................................................................................................................10

ACTIVE\61345013.v1-8/10/18

## I.   PLAINTIFFS CONTINUE TO FAIL TO MEET THEIR BURDEN OF ESTABLISHING SUBSTANTIAL NEED FOR NYCE'S CONFIDENTIAL INFORMATION

In bringing this Motion, Plaintiffs had the burden of establishing that they have a "substantial need" that overcomes Non-Party NYCE's timely objections to producing its ATM data and other highly confidential information.  As detailed in the Opposition, Plaintiffs failed to meet that burden because they provide nothing more than vague and conclusory attorney argument that their experts "need" the information for economic modeling.  In attempting to obscure the Motion's shortcomings, the Reply engages in mischaracterizations and misdirection that compel NYCE to submit this Surreply in response.

Plaintiffs assert as undisputed "fact" that NYCE's data includes millions of Class transactions (Dkt. No. 12-1, p. 2), but NYCE has not conceded this point; NYCE denies it, and Plaintiffs point to no evidence to support this assertion.  Instead, the only authority Plaintiffs put forth for this alleged "fact" is its own counsel's conclusory statement pointing to class definitions that mention nothing about NYCE.

Plaintiffs overstate NYCE's Opposition in suggesting that NYCE asserted that expert declarations are always needed to show substantial need.  NYCE never argued that there is a bright line rule requiring expert declarations.  However, expert declarations are frequently relied upon to establish substantial need, and NYCE's point is that – in this particular case – a few conclusory lines of unsupported attorney argument do not and cannot demonstrate substantial need.  *See, e.g.*, *Cooney v. Sun Shipbuilding & Drylock Co.*, 288 F. Supp. 708, 718 (E.D. Pa. 1968) (quashing subpoena where plaintiff, through counsel, failed to allege "any *factual* circumstances," and "bare averment of need, unsupported by any facts," failed to establish "actual need"); *In re Lazaridis*, 865 F. Supp. 2d 521, 527-28 (D.N.J. 2011) (quashing subpoena where moving party, *supported only by arguments in brief*, "offered essentially no information regarding the nature and

1

importance" of, *inter alia*, nonparty's electronic documents and computer logs, and thus failed to establish an "actual need"). In any event, Plaintiffs fail to provide any substantiation, through expert declaration or otherwise, to support the proposition that data regarding every aspect of every ATM transaction for the past 23 years is proportionate and needed for classwide damage models that are not even identified. Moreover, Plaintiffs' citation to snippets about economic models in other types of cases do nothing to describe the purported damage model here.[1]

Plaintiffs misrepresent that all of the other third party ATM networks subpoenaed by Plaintiffs have made or are in the process of making "data-rich" productions and falsely insinuate that NYCE is somehow holding up Plaintiffs' motions for class certification. *See* Dkt. Nos. 1-1, pp. 1, 5; 12-1, p. 1. In the Joint Status Report filed earlier this week, Plaintiffs report that they "still have not received data from 15 of the 24 subpoenaed entities," and that "the majority of third parties who have produced data made incomplete productions and are currently evaluating the parties' requests for supplementation or clarification." *See* Exh. "A" hereto at p. 12 of 24. Thus, Plaintiffs' suggestion that all of the other ATM networks have produced this information, and that NYCE is the lone holdout, is patently untrue.

While Plaintiffs repeatedly accuse NYCE of acting in bad faith, NYCE has acted in good faith by timely asserting its objections, engaging in meet and confers, and – unlike some of the

---

[1] Plaintiffs cite two cases for the proposition that regression models are frequently challenged at class certification on the ground that they have insufficient data inputs to be reliable. *See* Dkt. No. 12-1, p. 3, n. 5. Neither of these cases are helpful to Plaintiffs because in each case the court rejected challenges to the sufficiency of data inputs. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *20 (E.D.N.Y. Oct. 15, 2014) (refusing to strike economic modelling in response to challenge that it drew from an insufficient data pool); *McCrary v. Elations Co. LLC*, 2014 WL 12589137, at *7 (C.D. Cal. Dec. 2, 2014) ("the Court rejects Defendant's attack on the sufficiency of the data upon which Sharp relied"). Moreover, Plaintiffs have not even received all of Visa's and MasterCard's data so Plaintiffs cannot even establish that their data will not serve their expert's purposes. *See* Exh. "A" at pp. 11-14 of 24.

2

other networks apparently have – not stringing Plaintiffs along by promising data it could not produce.  It is curious that NYCE was rewarded for its good faith with a motion to compel, and yet Plaintiffs have not taken any action against the other 13 networks who have not produced any data and those whose productions are wholly incomplete.  Plaintiffs contend that, because all the other third party networks are producing this same information, NYCE's concerns about producing its highly competitively information are unfounded.  Yet, Plaintiffs' premise is simply untrue; all other third party networks have not produced the information Plaintiffs seek from NYCE.  *See* Exh. "A," and pp. 11-12 of 24.   Meanwhile, Plaintiffs hide the ball by refusing to disclose even the rudimentary elements of the mysterious "economic modeling" that purportedly "requires" the vast information sought in the Subpoenas.  Defendants Visa and MasterCard surely contend that no such economic model exists in this case, and no court has ever ruled Plaintiffs have *any* viable or recognized economic model for this particular case.  This is a one of a kind "ATM network fee" case, so no court has ever described, much less approved, any economic model for such cases.  The court in the underlying class actions has never ruled Plaintiffs have *any* viable or recognized economic model *for this particular case*.

## II.    NYCE'S ATM DATA AND INFORMATION IS TRADE SECRET AND/OR CONFIDENTIAL

As detailed in the Opposition, Plaintiffs' Subpoenas seek summary and granular ATM data revealing the identity of all of NYCE's current and former customers, NYCE's specific pricing arrangements with each of its customers, including transaction volumes, concentrations, and fees, and every aspect of every ATM transaction processed over NYCE's network for the past 23 years. *See* Dkt. No. 9-9, ¶¶ 18, 36-37.  Because ATM networks compete *on price* for an ever-shrinking pool of financial institution customers, the pricing and customer information requested is among NYCE's most competitively sensitive information, that is not publicly available, and that NYCE

protects through the use of strict internal access rules and policies, employee confidentiality agreements, client NDAs, and PCI security standards. *See* Dkt. No. 9-9 at ¶¶ 13, 24, 27-34. Moreover, if the data and information were made available to NYCE's competitors, especially Visa and MasterCard, it would give them a tremendous competitive advantage and cause irreparable harm to NYCE. *See* Dkt. No. 9-9 at ¶ 43.[2]  There can be no question that a compilation of data regarding all of NYCE's customers and their specific pricing arrangements has independent economic value and is therefore confidential, proprietary, and trade secret information. *See Youtie v. Macy's Retail Holding, Inc.*, 653 F. Supp. 2d 612, 621 (E.D. Pa. 2009) (collecting cases).

The Reply makes the discredited "we can just talk to the customer" argument.  That is, Plaintiffs argue that NYCE's pricing information cannot be all that confidential because nothing prevents NYCE's customers from revealing that information to competing networks to negotiate better deals. *See* Dkt. No. 12-1, p. 7.  Putting aside that NYCE typically enters into NDAs with its financial institution customers (Dkt. No. 9-9, ¶ 33), courts reject this argument in the context of compilations of customer pricing information concluding:

> The fact that the same information can be gathered on any one customer by talking with the customer herself is irrelevant.  The value in [a company's] customer information is in the compilation, categorization, and organization of information on thousands of customers, combined with the ability to search and format it into a

---

[2] It is categorically false that NYCE "never explained" its competitive concerns until Plaintiffs moved to compel. *See* Dkt. No. 12-1, p. 7. NYCE repeatedly explained these concerns during the meet and confer calls and letters. *See, e.g.*, Dkt. No. 9-8, p. 3 of 8 (stating that "NYCE and AFFN have grave confidentiality concerns about producing this competitively sensitive information" and explaining, inter alia, the risk of NYCE's data "fall[ing] into the hands of NYCE's and AFFN's direct competitors, which Visa and Mastercard most certainly are two"); Dkt. No. 1-12, p. 2 of 3 ("As explained at the outset of the meet and confers, Visa and Mastercard are direct competitors of NYCE and AFFN in the ATM space.  The subpoenas seek Respondent's most competitively sensitive confidential and proprietary information, including trade secrets.").

readily usable form.  This is what a competitor does not have and cannot easily create.

*Latuszewski v. Valic Fin. Advisors, Inc.*, 2007 WL 4462739, at \*17 (W.D. Pa. Dec. 19, 2007), *aff'd*, 393 F. App'x 962 (3d Cir. 2010).  Plaintiffs point to *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244 (3d Cir. 1985), for the proposition that "[d]ata scattered across the marketplace cannot rise to the level of a trade secret."  *See* Dkt. No. 12-1, p. 6.  *SI Handling* does not remotely stand for that proposition, and no such language is contained in the opinion.  To the contrary, *SI Handling* held  that "cost" and "pricing" information qualified for trade secret protection.  753 F.2d at 1260.  In any event, courts have recognized that "[a] compilation of data that has independent economic value can be protected as a trade secret," even where some of the data is independently available in the marketplace.  *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 706 (E.D. Pa. 2014).  Certainly, a compilation of information regarding every aspect of NYCE's historical business relationships with its customers is trade secret information, or at the very least confidential information, which showing is all that is necessary to shift the burden to Plaintiffs to establish substantial need.[3]

### III.    THE PCI SECURITY STANDARDS FURTHER SUPPORT THE CONFIDENTIAL NATURE OF NYCE'S INFORMATION

Plaintiffs suggest that the PCI Standards which govern protection of cardholder information can be simply disregarded because they are "superseded" by Plaintiffs' subpoenas.

---

[3] In attempting to detract from the extensive measures undertaken by NYCE to protect its confidential and proprietary information, Plaintiffs attach a NYCE customer presentation that compares NYCE's fees to those of rival networks.  *See* Dkt. Nos. 1-16, p. 9 and 12-1, p. 6.  Plaintiffs do not explain how they came into possession of this document.  However, this customer presentation shows that NYCE takes protective measures because it is expressly marked "confidential and proprietary" and NYCE generally has its customers sign NDAs.  *See* Dkt. Nos. 1-16, p. 28 and 9-9 at ¶ 33.  The fact that Plaintiffs chose to publicly disclose NYCE's confidential and proprietary information by filing it as an exhibit demonstrates that Plaintiffs' counsel cannot be trusted to secure NYCE's confidential and proprietary information.

5

ACTIVE\61345013.v1-8/10/18

Not surprisingly, Plaintiffs cite no authority for this remarkable proposition.  In today's day and age, violations of the PCI Standards are routinely used by class action plaintiffs to assert that companies failed to take adequate security measures to prevent a data breach.[4]  Plaintiffs appear to argue that the subpoenas shield NYCE from such liability arising out of violation of the PCI Data Security Standards if NYCE's data were hacked at, say, Quinn Emanuel.  *See* Dkt. No. 12-1 at 8.  Plaintiffs have not, however, provided any authority for this contention.  They certainly have not offered to provide NYCE with an indemnity for such liability.  NYCE has a responsibility to its financial institution shareholders, ATM providers, individual cardholders, and indeed its stockholders to do everything in its power to protect the privacy of cardholder information and minimize the risk of data breaches.  Plaintiffs, on the other hand, care not.

## IV.   PLAINTIFFS' RELIANCE ON THE PROTECTIVE ORDER IS MISPLACED

Plaintiffs' Reply overstates the law in suggesting that the "attorneys' eyes only" provision in the Protective Order is "dispositive" and fully addresses NYCE's competitive concerns.  *See* Dkt. No. 12-1, p. 7.  As outlined in the Opposition, the Protective Order is not particularly strong, and Plaintiffs blithely ignore that there is a real, non-speculative risk that any data NYCE produces

---

[4] Indeed, Quinn Emanuel's own website warns of the tremendous risk of legal liability from a data breach.  *See Traversing the Breach: Why You Need to Prepare for Data Breaches and How to Do It*, Quinn Emanuel Business Litigation Reports (Feb. 2015), https://www.quinnemanuel.com/the-firm/news-events/article-february-2015-traversing-the-breach-why-you-need-to-prepare-for-data-breaches-and-how-to-do-it/ ("Companies that have experienced data breaches not only have suffered from losses in good will, customer attrition and technological costs, but also legal liability…. [E]very prominent data breach has prompted a flood of consumer class action lawsuits, usually including a combination of negligence, contract, state consumer protection and federal privacy claims.").  Quinn Emanuel further advocates that companies "[p]erform a network security assessment" and that, "[o]nce a system map is in place, regular "penetration testing" must be conducted to identify potential system vulnerabilities." *Id.*  This is precisely what PCI compliance requires.  Yet, Quinn Emanuel itself cannot guarantee compliance with the protective order. *See* Dkt. No. 9, p. 33 (citing cases where Quinn Emanuel has violated protective orders).

to Plaintiffs will wind up in the hands of its most significant direct competitors, Visa and MasterCard.  *See* Dkt. No. 9, pp. 31-34.  Contrary to Plaintiffs' suggestion, there is no absolute rule that if a protective order is entered, a subpoenaed party must hand over its confidential and competitively sensitive information.  It is a fact specific inquiry and courts often conclude that a protective order is insufficient where direct competitors are involved.  *See, e.g., Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Elecs., Inc.*, 2014 WL 2808984, at *5 (N.D. Ill. June 20, 2014) (inherent risk that disclosed confidential information will be used despite a protective order, "is one that ought not to be taken where one competitor seeks the confidential, proprietary information of another competitor who is not a party to the litigation….").  Moreover, in denying discovery of competitively sensitive information, courts have recognized the reality of what actually happens when such information is disclosed to competitors:

> What happens with any information disclosed by Congoleum in response to Mannington's subpoena, particularly at trial, is anyone's guess. **Although the protective order allows the designation by Congoleum that such information is confidential and limits initial disclosure to outside counsel, the parties to this litigation are left with the option of how disclosure of such confidential information is handled at trial**. As a result, control is in the hands of Congoleum's undisputed competitors and the court. Despite Mannington's arguments to the contrary, **"it would be divorced from reality to believe that either party here would serve as the champion of its competitor ... to maintain the confidentiality designation or to limit public disclosure ... during trial."** *Micro Motion*, 894 F.2d at 1325. Moreover, courts have traditionally recognized that disclosure to a competitor is more harmful than disclosure to a noncompetitor. *Am. Standard*, 828 F.2d at 741, relying on *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 293, 299 (D. Del. 1985).  Therefore, potential harm exists for Congoleum resulting from disclosure of the information demanded by Mannington.

*Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 260 F.R.D. 525, 530-31 (D. Del. 2002) (emphases added).

7

## V.   PLAINTIFFS' SUBPOENA SEEK TO IMPOSE ENORMOUS BURDEN ON NYCE

Having served outrageously overbroad subpoenas seeking every aspect of every ATM transaction over NYCE's network for the past 23 years, Plaintiffs should not be at all surprised that the costs to respond to even a fraction of Plaintiffs' requests totals in the billions of dollars, especially given that millions of transactions are processed over NYCE's network each day. *See* Dkt. No. 9-9, ¶¶ 38, 41-42.  Plaintiffs' Reply criticizes the estimated costs of compliance detailed in Mr. Woodbury's declaration, but nowhere do Plaintiffs state what they believe the costs should be or how Mr. Woodbury's calculations are allegedly incorrect.  While Plaintiffs take issue with the substantial redaction costs, which they contend are "not even permitted," Plaintiffs ignore that the reports and other documents responsive to Plaintiffs' request contain highly confidential payment card information that is not responsive to the subpoenas, including non-ATM point-of-sale ("POS") transactions as well as the cardholders's primary account number ("PAN") that NYCE is obligated to undertake extensive efforts to secure under PCI Standards.  *See* Dkt No. 9-9 at ¶¶ 28-34.   Certainly, NYCE cannot simply divulge PAN and POS information that Plaintiffs make clear "is not information that Plaintiffs['] [Subpoenas] even requested." *See* Dkt. No. 12-1, p. 10.  In any event, Plaintiffs' contention that redactions are not permitted is ironic given that Plaintiffs themselves have apparently made substantial, unilateral redactions of financial information in their discovery productions to Defendants.  *See* Dkt. No. 10-1, p. 5, 15-17 of 30. Even putting aside the costs of redactions, the monumental costs of downloading all of the information and data requested still totals in excess of ten million dollars ($11,744,770) which imposes a substantial burden on NYCE.  *See* Dkt. No. 9-9 at ¶ 42.

Plaintiffs' representations that no other subpoenaed network has suggested production costs were of this magnitude, and that similar data requests are satisfied by a simple "push of a

8

button," (Dkt. No. 12-1, p. 9) should all be met with skepticism given that Plaintiffs reported this week that none of the other networks have produced the data requested. *See* Exh. "A." While Plaintiffs suggest that NYCE should have mentioned during the meet and confers that the costs of compliance totaled $7 billion dollars, Plaintiffs' Subpoenas are so ridiculously overbroad it made no sense to go through the time and effort of calculating an exact number until now.

Plaintiffs incorrectly assert that if NYCE had "involved" Plaintiffs in formulating searches tailored to Plaintiffs' requests, requested extraneous information would not be included. *See* Dkt. No. 12-1, p. 10. This argument ignores the facts: The majority of the data requested by Plaintiffs is contained in existing reports. The format of these NYCE reports are what they are, and bits and pieces of select information cannot be pulled from them no matter how "tailored" Plaintiffs' searches might be. NYCE has no obligation to change its data reporting format more to Plaintiffs' liking.

## VI. PLAINTIFFS ASK NON-PARTY NYCE TO PRODUCE MASSIVE AMOUNTS OF DATA BUT REFUSE TO PAY THE COSTS FOR IT

While Plaintiffs baldly claim NYCE's data is "essential," they are quick to rebuff any responsibility for the enormous costs involved in producing even a fraction of the information requested. Instead, Plaintiffs expect NYCE – a disinterested nonparty – to shoulder the burden of helping prove Plaintiffs' case against Visa and MasterCard, notwithstanding that Plaintiffs still have not established why NYCE's data is even needed. Although parties to litigation must generally bear the burden of discovery costs, the rationale for this general rule "is inapplicable where the discovery demands are made on nonparties. Nonparties are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party." *United States v. CBS, Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) (footnote omitted); *accord, e.g.*, *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717

9

(1st Cir. 1998) ("[P]arties to a law suit must accept [invasive discovery] as a natural concomitant of modern civil litigation.  Non-parties have a different set of expectations.").  Plaintiffs contend that NYCE should nevertheless foot the bill because "[i]t is a wholly-owned subsidiary of … a billion-dollar company listed on the New York Stock Exchange." Dkt. No. 12-1, p. 11.  However, courts must be vigilant to protect the rights of third parties even where they are large companies. *CBS*, 666 F.2d at 372 ("Absent some compelling justification, even large nonparty corporations …should not be compelled to subsidize the defense [or prosecution] of other large corporations.")

NYCE maintains that Plaintiffs wholly failed to meet their burden of demonstrating the necessity, or even relevance, of the documents they seek.  If, however, the Court orders NYCE to produce any of the information requested, Rule 45(d)(2)(B)(ii) mandates that the costs of production be shifted to Plaintiffs to protect NYCE from significant expense.[5]

## VII.    CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion to Compel must be denied.

Dated: August 10, 2018                    Respectfully submitted,

*s/ Clair E. Wischusen*
Clair E. Wischusen (018022009)
Michael Eidel (pro hac vice)
FOX ROTHSCHILD LLP
2700 Kelly Road, Suite 300
Warrington, PA 18976
Telephone: (215) 345-7500
Facsimile: (215) 345-7507
cwischusen@foxrothschild.com
meidel@foxrothschild.com

*Attorneys for Non-Party NYCE
Payments Network, LLC*

---

[5] Plaintiff suggest that NYCE was required to submit financial information showing whether the costs of compliance are "significant" to NYCE.  To be sure, the $7 billion dollars and infinite time that would be required to produce even a fraction of the information requested would be significant to even the largest of corporations.

ACTIVE\61345013.v1-8/10/18

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2018 service was made of Non-Party NYCE Payments Network, LLC's Surreply in Further Support of Opposition to Plaintiffs' Motion to Compel Compliance With Subpoena by electronically filing the foregoing with the Clerk of Court using the CM/ECF system and by serving true and correct electronic copies thereof on the following counsel via email:

Isaac Nesser
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison, 22nd Floor
New York, NY 10010
isaacnesser@quinnemanuel.com

*Attorneys for Andrew Mackmin and Sam Osborn*

*Of Counsel:*

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
steve@hbsslaw.com

Jennifer Fountain Connolly
HAGENS BERMAN SOBOL SHAPIRO LLP
1701 Pennsylvania Avenue, N.W., Suite 300
Washington, D.C. 20006
jenniferc@hbsslaw.com

Ben M. Harrington
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
benh@hbsslaw.com
Stephen R. Neuwirth
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
stephenneuwirth@quinnemanuel.com

1

Adam B. Wolfson
Viola Trebicka
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
adamwolfson@quinnemanuel.com

Craig L. Briskin
MEHRI & SKALET, PLLC
1250 Connecticut Ave., N.W., Suite 300
Washington, DC 20036
Cbriskin@Findjustice.com

*Counsel for Andrew Mackmin and Sam Osborn*

Douglas Thompson
Michael G. McLellan
FINKELSTEIN THOMPSON LLP
1077 30th Street, N.W., Suite 150
Washington, D.C. 20007
dthompson@finkelsteinthompson.com
mmclellan@finkelsteinthompson.com

*Counsel for Mary Stoumbos*

Jonathan L. Rubin
MOGINRUBIN LLP
1615 M Street, N.W., Third Floor
Washington, D.C. 20036
jrubin@moginrubin.com

Jennifer Oliver
MOGINRUBIN LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
joliver@moginrubin.com

*Counsel for Plaintiffs the National ATM Council, Inc.;*
*ATMs of the South, Inc.; Business Resource Group, Inc.;*
*Just ATMs, Inc.; Wash Water Solutions, Inc.; ATM Bankcard*
*Services, Inc.; Selman Telecommunications Investment Group,*
*LLC; Scot Garner d/b/a SJI; Turnkey ATM Solutions, LLC; Trinity*
*Holdings Ltd., Inc.; and T&T Communications, Inc. and Randal N.*
*Bro d/b/a T & B Investments*

2

Dated: August 10, 2018                              *s/ Clair E. Wischusen*
                                                    Clair E. Wischusen
                                                    FOX ROTHSCHILD LLP
                                                    2700 Kelly Road, Suite 300
                                                    Warrington, PA 18976
                                                    (215) 345-7500
                                                    cwischusen@foxrothschild.com

3